## MURPHY, Appellant, v. ST. LOUIS TRANSIT COMPANY.

### Division One, May 24, 1905.

1. **DAMAGES: Jumping to Avoid Accident: Matter for Jury.**
Plaintiff attempted to drive his horse and buggy across a street
railway track in which there was a slot for a grip-beam, the
horse's foot became fastened in the slot, plaintiff signaled to the
motorman of an approaching electric car from 400 to 500 feet
away to stop, the signal was unheeded, and plaintiff sues both
for his consequent personal injuries and injury to his horse and
buggy. *Held*, that whether the plaintiff, in remaining in his
place in the buggy and continuing to urge ·his horse to free
his foot, after it was apparent that the motorman was giving
no heed to his signal, failed to exercise the care that an ordin-
arily prudent man would have been likely to exercise in his situ-
ation, was a question for the jury, and not for the court, and
consequently it was not error for the court to direct the jury
that, if they should find for plaintiff, they should take into ac-
count, in estimating his damages, his personal injuries.

2. ———: ———: **Liability of Railroad.** It is not error, under
such circumstances, to refuse to instruct the jury that if
plaintiff while in his buggy on the railway track after giving to
the motorman of the on-coming car a signal to stop, saw that
the motorman was making no effort to stop, then it was plain-
tiff's duty to jump, and if he failed to do so and because of such
failure sustained the personal injuries complained of, the rail-
way company ·is not liable. There being no evidence that the
plaintiff saw the motorman was going to disregard his signal
to stop, to approve such an instruction would be to authorize on
the part of the motorman a reckless disregard of human life.

Appeal from St. Louis City Circuit Court.—*Hon. Sel-*
*den P. Spencer*, Judge.

REVERSED AND REMANDED (*with directions*).

*A. R. Taylor* and *Howard Taylor* for appellant.

The plaintiff, whilst undertaking to drive his bug-
gy and horse across defendant's tracks on a public
street, was in the exercise of an indisputable right, ac-

cording to all law. Men, women and children have an equal right with a railroad to the use of a highway. Winters v. Railroad, 99 Mo. 517; Henry v. Railroad, 113 Mo. 536; Oates v. Railroad, 168 Mo. 544. If one citizen, as in the case at bar, whilst exercising his lawful right in crossing a street, by some accident or condition of the street is unable to expeditiously get out of the way of another citizen, that other citizen is bound, in duty, to use ordinary care, to avoid injury to his brother citizen in distress, to stop or divert his course. Now, the railroad citizen cannot divert its course, and must, to avoid injury to the citizen, stop or give time for the citizen to relieve his situation. If it does not do this when, in the exercise of ordinary care, it may do so, the law pronounces its act negligence. If the evidence given for the plaintiff be true, and it was found to be true by the jury, then under the law we submit that this defendant was clearly liable as found by the verdict. Granting that plaintiff knew these facts and that he was negligent in failing to get out of the wagon and thus avoid injury, it does not follow that the motorman owed him no duty and that plaintiff's negligence was the proximate cause of the injury. Klockenbrink v. Railroad 81 Mo. App. 356; McAndrews v. Railroad, 88 Mo. App. 376; Guenther v. Railroad, 108 Mo. 21; Reardon v. Railroad, 114 Mo. 406; Sinclair v. Railroad, 133 Mo. 239; Morgan v. Railroad, 159 Mo. 280; Chamberlain v. Railroad, 133 Mo. 605; Klockenbrink v. Railroad, 172 Mo. 687; Dunkman v. Railroad, 95 Mo. 244; Kellny v. Railroad, 101 Mo. 67; Hanlon v. Railroad, 104 Mo. 389; Czezewzka v. Railroad, 121 Mo. 201; Inland Seaboard Co. v. Tolson, 139 U. S. 557; Railroad v. Ives, 144 U. S. 408.

*Boyle, Priest & Lehmann, Geo. W. Easley* and *Geo. T. Priest* for respondent.

(1) In an action for personal injuries, taking the plaintiff's evidence as true and giving it the most fav-

orable interpretation, if it shows beyond a doubt that
he was negligent, and that negligence contributed di-
rectly to his injuries, a demurrer to the evidence ought
to be sustained. White v. Railroad, 84 Mo. App. 411;
Davis v. Railroad, 159 Mo. 1; Powell v. Railroad, 76
Mo. 83; McGauley v. Railroad, 179 Mo. 583; Hayden
v. Railroad, 124 Mo. 566; Kelsay v. Railroad, 129 Mo.
362; Payne v. Railroad, 136 Mo. 562; Lamb v. Rail-
road, Judge Sherwood's dissenting opinion, 147 Mo.
171.    (2) In an action for personal injuries it
is error for a court in an instruction to submit to
the jury's consideration an element of damage caused
by the plaintiff's own negligence.    The plaintiff can-
not recover when his own negligence caused his in-
juries. Kaminski v. Iron Works, 167 Mo. 462.    (3) In
an action for personal injuries, where the defense is
contributory negligence, it is error for the court to re-
fuse, at the defendant's request, an instruction which
submits to the jury the question of the plaintiff's con-
tributory negligence.    Kaminski v. Iron Works, 167
Mo. 462.

VALLIANT, J.—Plaintiff sues for damages for
injuries to his person and to his horse and buggy suff-
ered in a collision with one of defendant's street cars.
The plaintiff's evidence tended to show the following:

Defendant in July, 1901, operated a double-track
street railroad in Olive street with electricity for its
motive power.    The railroad had originally been con-
structed for cable-power, and there was a slot between
the rails for the passage of the grip-beam.    On the
morning in question the plaintiff was driving in his
buggy in Olive street between Vandeventer avenue and
Sarah street.    His business took him to the south side
of the street, where he stopped and alighted, and when
he re-entered his buggy to resume his course west he
aimed to cross to the north side of the street, and when
his horse stepped into the railroad track its foot be-

came fastened in consequence of the heel of a shoe on one of its fore feet getting caught in the slot. Just then a car of defendant came in sight, rising over the hill at Sarah street, and coming down grade towards Vandeventer avenue at a rate of at least fifteen miles an hour. When the car came in sight it was from 400 to 500 feet distant from the buggy. The plaintiff sat in his buggy urging the horse the best he could, pulling first one rein and then another, in an endeavor to get its foot free. The car came steadily on without any apparent effort on the part of the motorman to slacken its speed until it was too close to stop, and struck the buggy with such force that the plaintiff was thrown out and severely injured and the horse and buggy were also injured. When the car was 300 feet distant the plaintiff waived his hand to the motorman as a signal to stop, but the motorman did not heed the signal. It was apparent to an onlooker that the horse was either balking or was fastened; it succeeded in getting its foot loose just before the car struck the buggy, but not in time to escape.

The evidence for the defendant tended to show that the plaintiff got in his buggy, drove hurriedly upon the east-bound track about 25 feet in front of the on-coming east-bound car, so that it was impossible to avert the accident.

The jury returned a verdict for the plaintiff for $6,500, being $6,400 for personal injuries, and $100 damages to the horse and buggy. The court sustained the defendant's motion for a new trial, on the ground that it had erred in giving a certain instruction for the plaintiff, from which ruling the plaintiff appealed.

In the brief for respondent the ruling of the court is defended on three grounds: first, that there was no evidence to go to the jury, therefore the instruction asked looking to a nonsuit should have been given; second, that instruction 3 for the plaintiff was error;

third, that it was error to refuse instruction 8 for defendant.

I. The first and second of the above propositions are really the same, that is, that the case should not have been given to the jury at all. Instruction 3 which is criticised is an instruction on the measure of damages only, and the criticism is that it directs the jury, if it should find for the plaintiff, to take into account, in estimating his damages, his personal injuries. The point is thus stated in respondent's brief:

"There is no doubt but that the plaintiff's personal injuries were brought about by his own negligence under the circumstances; there might be some doubt as to whether the damage to his horse and buggy might not be properly given to the jury's consideration. But the error of allowing the jury to pass upon the damages to the plaintiff's person was an error which went to the very heart of the plaintiff's case."

The argument is that when the plaintiff saw that his horse's foot was fastened, saw the car coming at a high rate of speed, and saw that the motorman gave no heed to his signal of distress, the ordinary care which the law requires in such case would have prompted the plaintiff to jump out of the buggy and save himself.

There is no doubt but that between the time the car came in sight and the instant of the collision—perhaps even after it became apparent to an onlooker that the motorman was disregarding the plaintiff's signal —the plaintiff could have saved himself by jumping from the buggy. But whether the plaintiff, in remaining in his place and continuing to urge his horse to free his foot, was guilty of failure to exercise the care that an ordinarily prudent man would have been likely to exercise in his situation, was a question for the jury, not for the court, and it was submitted to the jury under instruction fair to the defendant. It was

not unreasonable for the plaintiff to expect his horse, at any moment, to free his foot from the slot, as in fact it did, but a moment too late. The motorman testified that running at the rate he was he could have stopped the car in 65 feet and by the reverse in 45 to 50 feet. The plaintiff could not know that the motorman would disregard the signal to stop and it was a question for the jury under the circumstances to answer, if the plaintiff did not have a right to trust that the motorman would stop. Besides, the plaintiff's situation was not one calculated to induce calm judgment. The motorman must have seen, because the by-standing witnesses saw, that, from some cause, either balking or other, the plaintiff was unable to get his horse to go forward, and if the motorman did see the situation he had no right to regulate his course on a calculation that the plaintiff would leap from his buggy and leave his horse and vehicle to be crushed by the car.

There was no error in allowing the case to go to the jury, and there was no error in instructing the jury if they should find for the plaintiff to take into account his personal injuries.

II. At the request of the defendant the court in effect instructed the jury that before they could find for the plaintiff it was necessary to find that the defendant's negligence was the sole cause of the injuries complained of, but in order to find for the defendant it was not necessary to find that the injuries were the sole cause of plaintiff's own negligence, it was sufficient if he was guilty of some negligence that contributed with that of the defendant to cause the accident; that it was not the duty of the motorman to stop the car until he saw, or by the exercise of ordinary care would have seen, that unless the car was stopped a collision with the plaintiff would result; that if the plaintiff went upon the track without looking or listening he was negligent and could not recover; that negligence

on the part of the defendant was not to be presumed, but the burden was on the plaintiff to prove it; that if the plaintiff drove on the track immediately in front of the car when it was too late for the motorman by stopping it to have avoided the accident, the verdict should be for defendant.

The defendant asked a number of other instruc tions which were refused among which was the following, which defendant now insists it was error to have refused:

"8.   The court further instructs the jury that if they believe from the evidence in this case that plaintiff's horse stopped on said track after plaintiff drove thereon, and that said car was then at such a distance that said plaintiff could have jumped out of said buggy and have avoided receiving any personal injuries, and that said plaintiff saw that said car was making no ef- fort to stop, and that by plaintiff's failure to jump from said vehicle he sustained personal injuries, then he cannot recover for such personal injuries, and your verdict must be for the defendant, as to such injuries."

The argument carried to its full length is that if the plaintiff saw that the motorman was making no ef- fort to stop then it was his duty to jump, and if he failed to do so the defendant was not liable, although the motorman, with his eyes open and alive to the situ- ation, with time and space and ample means at hand to avoid the collision, bore down on the plaintiff at full speed.

There was nothing in the evidence on which to base a finding that the plaintiff saw that the motorman was going to disregard the signal of distress.   There was every reason which common humanity could suggest to induce the belief that the motorman would stop and his failure to do so was little less than reckless disregard of human life.   We cannot hold it error to refuse that instruction, unless we take back everything that we have heretofore said on the humanitarian doctrine.

We find no error in the giving or refusing of the instructions, and as there is no suggestion of error in any other respect, the ruling of the trial court in sustaining the defendant's motion for a new trial must be reversed.

The judgment sustaining the motion for a new trial is reversed and the cause remanded to the circuit court with directions to overrule the motion for a new trial and enter judgment for the plaintiff on the verdict.

All concur, except *Marshall, J.,* not sitting.